IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FINMECCANICA S.p.A., et al.,    )
                                )
        Plaintiffs,             )
                                )
            v.                  )        1:07cv794 (JCC)
                                )
GENERAL MOTORS CORPORATION,     )
                                )
        Defendant.              )

**M E M O R A N D U M     O P I N I O N**

This matter is before the Court on Defendant General

Motors Corporation's ("Defendant") Motion to Transfer Pursuant to

28 U.S.C. § 1404(a) or, in the Alternative, to Dismiss for Lack

of Subject Matter Jurisdiction and Failure to Name Essential

Parties.  For the following reasons, the Court will grant

Defendant's Motion to Transfer and, as a result, will not reach

Defendant's Motion to Dismiss in the Alternative.

### I. Background

The Finmeccanica Group is an Italian industrial group

of companies owned by Finmeccanica S.p.A. ("Finmeccanica") that

manufacture and sell air, rail, and automotive transportation

systems and vehicles, energy production facilities, satellites,

and defense systems and electronics.  Ansaldo Ricerche S.p.A.

("ARI") is an Italian research organization within the

Finmeccanica Group that engages in the design, development, and

1

licensing of these technologies.  In May 2000, ARI contracted
with the University of Rome "La Sapienza" and the University of
Rome 3 (collectively the "University of Rome"), by means of
Professors Fabio Crescimbini and Federico Caricchi ("the
Professors"), to assist ARI in the design, construction, and
testing of electric motors and control systems that would be used
in a new electric propulsion system.  ARI also contracted with
Lucchi R. Electtromeccanica s.r.l., an Italian entity, through
its president, Giorgio Lucchi (collectively "Lucchi"), to assist
in the development of prototypes of the electric motors.  As part
of these contracts (collectively, the "ARI contracts"), the
University of Rome and Lucchi granted ARI ownership of all
technology resulting or arising from their collaboration with
ARI, agreed to maintain the confidentiality of such technology
and all information and trade secrets provided by ARI
(collectively, the "ARI motor technology"), and agreed that ARI
was entitled to the patent application filings and any resulting
patent rights to the ARI motor technology.

        According to Finmeccanica and ARI ("Plaintiffs"),
Defendant obtained access to the ARI motor technology after Dr.
James Nagashima ("Dr. Nagashima"), Director of General Motors's
Advanced Technical Center in Torrance, California (the
"California facility"), secured the assistance of the Professors
and Lucchi in the design and development of an electric motor for

2

use in Defendant's hybrid vehicles.  Defendant launched its own wheel motor design project at a January 2002 meeting between the Professors, Lucchi, and Dr. Nagashima, amongst others, which was held at Defendant's California facility.  The Professors and Lucchi disclosed to Defendant the ARI motor technology, including ARI's confidential information and trade secrets, and photographs of the ARI motors.  Defendant then induced the Professors and Lucchi to file patent applications for the ARI motor technology and to assign any resulting patent rights to Defendant.

In 2006, Plaintiffs discovered that Defendant had filed with the United States Patent and Trademark Office ("USPTO") provisional patent applications in August 2003 and non-provisional patent applications in July 2004 disclosing and claiming the ARI motor technology.  The Professors and Lucchi, as well as General Motors personnel such as Dr. Nagashima, are the named inventors on these patent applications.  In 2005, these applications were published by the USPTO, thus disclosing trade secrets relating to the ARI motor technology.  In addition, two of the three pending applications have been allowed by the USPTO and the issue fees have been recently paid.  Defendant has also filed international or foreign patent applications that disclose and claim the ARI motor technology.

On August 10, 2007, Plaintiffs filed a ten count Complaint seeking, *inter alia*, a declaratory judgment that ARI is

3

the sole and exclusive owner of all rights, title, and interest in the patent applications relating to the ARI motor technology, as well as the resulting patents.  Plaintiffs seek, in the alternative, a declaratory judgment that ARI owns a pro rata undivided interest in the patent applications and resulting patents.  Additionally, Plaintiffs bring numerous state law claims against Defendant, including: (1) statutory conspiracy to injure business under Va. Code § 18.2-499; (2) conversion; (3) detinue; (4) tortious interference with prospective economic advantage; (5) unjust enrichment; (6) slander of title; (7) tortious interference with contractual relations; (8) misappropriation of trade secrets under the California Uniform Trade Secret Act, Cal. Civ. Code §§ 3246*, et. seq.*; and (9) unfair competition in violation of California Business and Professions Code §§ 17200, *et. seq.*

On October 18, 2007, Defendant filed a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Name Essential Parties.  This matter is currently before the Court.

## II.  Standard of Review

28 U.S.C. § 1404(a) governs motions to transfer, and provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any

4

civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision whether to transfer a lawsuit to another district is committed to the "sound discretion" of the district court. *Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956). In applying Section 1404(a), a district court must first decide whether the claims might have been brought in the transferee forum. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003); *see also Brown Mfg. Corp. v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 663 (E.D. Va. 2002). Next, the court must determine whether transfer would be for the convenience of the parties and witnesses and in the interest of justice. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 735 (E.D. Va. 2007). Specifically, the court must consider: (1) the plaintiff's choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interests of justice. *Id.* at 736; *see also Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-62 (E.D. Va. 1998). The movant bears the burden of showing that transfer is proper. *JTH Tax, Inc.*, 482 F. Supp. 2d at 736.

### III. Analysis

Defendant moves to transfer the case to the Central District of California on the grounds that it is the more convenient and appropriate forum. In the alternative, Defendant

moves to dismiss the case for failure to name essential parties and for lack of subject matter jurisdiction.  The Court will address Defendant's Motion to Transfer first before turning to Defendant's Motion to Dismiss.

A. Defendant's Motion to Transfer

Defendant argues that the various factors considered in a Section 1404(a) motion weigh heavily in favor of transferring the case from the Eastern District of Virginia to the Central District of California.  In deciding this question, the threshold issue the Court must consider is whether this action could have been brought in the proposed transferee forum.  Subject matter jurisdiction over this action lies in diversity.  *See* 28 U.S.C. § 1332.  A diversity action may be brought "in a judicial district where any defendant resides, if all defendants reside in the same state."  28 U.S.C. § 1391(a)(I).  A defendant that is a corporation resides "in any judicial district in which it is subject to personal jurisdiction at the time an action is commenced."[1]  *Id.* at § 1391(c).  A diversity action may also be brought in "a judicial district in which a substantial part of

---

[1] Where, as here, there is no applicable federal statute governing personal jurisdiction, a district court applies the law of the state in which the district court sits.  *See* Fed. R. Civ. P. 4(k)(1)(A).  Thus, in determining whether this case could have been brought in the Central District of California, the Court applies California law.

the events or omissions giving rise to the claim occurred."  28
U.S.C. § 1391(a)(ii).

Given the location of Defendant's California facility
in the Central District of California, Defendant may very well
have "substantial" or "continuous and systematic" contacts with
California such that the U.S. District Court for the Central
District of California possess general jurisdiction over
Defendant.  *See Bancroft & Masters, Inc. v. Augusta National,
Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  At the very least,
because a substantial portion of the events giving rise to
Plaintiffs' claims – including Defendant's wheel motor design
project, which made use of the ARI motor technology – occurred at
Defendant's California facility, *see* Pls.' Compl. at ¶¶ 16-18,
the U.S. District Court for the Central District of California
has specific jurisdiction over Defendant.  *See Ballard v. Savage*,
65 F.3d 1495, 1498 (9th Cir. 1995)(outlining three-part test to
determine whether a court may exercise specific jurisdiction).
As a result, Defendant "resides" in the Central District of
California within the meaning of Section 1391(a)(I), and this
action could have been brought in that District.[2]

---

[2] Furthermore, because a substantial portion of the events
giving rise to Plaintiffs' claims occurred in the Central
District of California, this case could have been brought there
under Section 1391(a)(ii) as well.

1) Plaintiffs' Choice of Forum

A plaintiff's choice of forum is generally entitled to substantial weight. *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007). However, a plaintiff's chosen venue will not be given substantial weight when the plaintiff brings suit in "a forum other than its home forum and the claims bear little or no relation to the chosen forum." *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003)(citing *Intranexus, Inc. v. Siemens Med. Solutions Health Serv. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002) and *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001)). If the plaintiff selects a forum "where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, 'that plaintiff's choice loses its place status in the court's consideration.'" *Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005)(quoting *Ion Beam Applications S.A., v. Titan Corp.*, 156 F. Supp. 2d 556, 563 (E.D. Va. 2000)).

Plaintiffs contend that there is a "substantial connection" between Defendant's affirmative acts in the Eastern District of Virginia and Plaintiffs' claims that justify applying substantial weight to Plaintiffs' choice of forum. Pls.' Mem. in Opp'n at 7. Specifically, Plaintiffs argue that Defendant's conduct in relation to the USPTO, which is located in this District, including filing patent applications, making knowingly

8

false representations, and destroying trade secrets, are
affirmative acts that occurred here and that are central to
Plaintiffs' allegations.  *Id.* at 7-8.  Defendant, however, filed
its patent applications and related documents by placing them in
the mail in Michigan, which, as Defendant argues, suggests that
no affirmative act actually took place in this District.  Def.'s
Reply at 5 (citing Ex. A to Second Decl. of Lee Ann Stevenson).

More importantly, if Plaintiffs' theory is correct, the
mere fact of filing a patent application with the USPTO would
create a substantial connection and make venue proper in this
District.  Plaintiffs cite no cases that stand for the
proposition that the location of the USPTO creates such a
connection to this forum.[3]  As Defendants note, Courts in this
District have had no qualms about transferring patent cases to
other jurisdictions despite the location of the USPTO.  *See*
Def.'s Reply at 6 n.2 (citing cases).

Defendant argues that Courts in the Eastern District of
Virginia have repeatedly found that the preferred forum in patent

---

[3] This Court's holding in *Schleit v. Warren*, 693 F. Supp.
416 (E.D. Va. 1988), cited by Plaintiffs, does not support their
position.  In *Schleit*, this Court found that serving process in
Virginia, which established the basis of an abuse of process
claim, was sufficient to establish personal jurisdiction over an
out-of-state defendant.  *Id.* at 422-23.  This holding dealt with
personal jurisdiction, not with venue, and thus is not applicable
here.  Furthermore, in *Schleit* this Court denied the defendant's
motion to transfer venue not because service of process took
place in Virginia, but because the defendant had not shown that
the interests of justice and convenience tipped the balance in
favor of a transfer.  *Id.* at 423.

infringement cases is the "center of the accused activity." *See, e.g., Original Creatine Patent Co.*, 387 F. Supp. 2d at 569; *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). Because the underlying case is not a patent infringement case, the Court cannot say with certainty that the "center of the accused activity" test applies here.[4] However, for Plaintiffs' chosen form to receive substantial weight there must still be a connection between the forum and the operative facts giving rise to the dispute, and Plaintiffs here have shown none. *See Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 666 (E.D. Va. 1998). "[I]f none of the operative events in the lawsuit took place in the district in which the action was originally filed, a motion to transfer to the district in which the events occurred is likely to succeed." 17 James Wm. Moore, et al., *Moore's Federal Practice* § 111.13(1)(d)(I) n. 23 (3d ed. 2005).

In contrast to the Eastern District of Virginia, the Central District of California has a substantial connection to

---

[4] Contrary to Plaintiffs' assertion, the Court in *General Creation LLC v. Leapfrog Enterprises, Inc.* did not affirmatively limit this "center of accused activity" analysis to patent infringement cases. 192 F. Supp. 2d 503, 505-06 (W.D. Va. 2002). Rather, the Court in *General Creation* simply held that this analysis would not apply unless the plaintiff filed suit in a foreign forum. As this Court will explain, because the Eastern District of Virginia is not Plaintiffs' home forum, it is more likely, not less, that the "center of accused activity" analysis would apply here. Regardless, the Court will not decide whether this analysis in fact applies to this case, and will base its decision on other grounds.

this case.  Defendants' California facility, located in the Central District of California, is where Defendants developed and tested their wheel motor technology, where they met in person with the Professors and Lucchi regarding that technology and corresponded with them regarding their respective rights in that technology, and where Defendant maintains its engineering records for this technology.  Def.'s Mot. to Transfer at 9 (citing J. Nagashima Aff. at ¶¶ 3-4, 8).

Additionally, Plaintiffs' claim that the Eastern District of Virginia is their home forum is without merit.  It is undisputed that Finmeccanica and ARI are alien corporations with their principal place of business in Italy.  Complaint at ¶¶ 1-2. Plaintiffs, however, contend that while this District is not their domicile, because the Finmeccanica Group has two United States companies headquartered within this District – Selex Sensors, Inc. ("Selex Sensors") and August Wetland, Inc. ("August Wetland") – it is "nevertheless effectively their home forum." Pls.' Mem. in Opp'n at 8.  In support of this contention, Plaintiffs cite *General Creation LLC v. Leapfrog Enterprises, Inc.*, 192 F. Supp. 2d 503, 505-06 (W.D. Va. 2002).  In that case, the Court found that the Western District of Virginia was the "equivalent of a home forum" for the plaintiff because the company's founder, who also invented the patented item at issue in the litigation, worked in the District and was in possession of the documents relating to the invention.  *Id.* at 505-06.  The

11

Court further based its finding on the fact that the plaintiff's exclusive U.S. distributor – also a plaintiff in the case – was located in the Western District of Virginia. *Id.* at 506.  By contrast, Plaintiffs here do not claim that Selex Sensors and August Wetland – both relatively minor operations, *see* Exs. B and C to Decl. of Lee Ann Stevenson – played any role in the events giving rise to this litigation.[5]  The Court thus concludes that, because Plaintiffs have chosen a foreign forum and because the cause of action bears little or no relation to the Eastern District of Virginia, Plaintiffs' choice of forum is not entitled to substantial weight.

2) Witness convenience and access

Witness convenience and access is often the most important factor in determining whether transfer is appropriate. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 737 (E.D. Va. 2007). However, its influence is dependent upon whether the movant meets its burden "to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the

---

[5] *Ion Beam Applications S.A. v. Titan Corp.*, 156 F. Supp. 2d 552 (E.D. Va. 2002), cited by the *General Creation* Court, is also distinguishable from this case.  In *Ion*, the District Court found that a foreign corporation's home forum "might be" a state where its subsidiaries – who were also plaintiffs in the litigation – were located, or where its witnesses were located. *Id.* at 563. Here, by contrast, neither Selex Sensors nor August Wetland are parties to this litigation.  And, as the Court will explain, none of Plaintiffs' witnesses reside in Virginia.

degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636.
Moreover, in evaluating this factor courts must draw a
distinction between party witnesses and non-party witnesses and
"afford[] greater weight to the convenience of non-party
witnesses." *Lycos*, 499 F. Supp. 2d at 693.

Defendant cites six of its employees – including four
of the five named inventors on the patents and applications in
question and the business development personnel who planned and
initiated the program with the Professors and Lucchi – "with
potentially relevant knowledge of the allegations in the
Complaint." Def.'s Mot. to Transfer at 10-11 (citing J.
Nagashima Aff. at ¶ 5).  All of these employees are located in
the Central District of California.  *Id.*  Though Defendant has
not specifically set out any potential testimony of these
witnesses, Defendant has identified six witnesses located in the
Central District of California who appear to be closely
intertwined with the events that form the basis of Plaintiffs'
claims.  This showing is sufficient proof to demonstrate witness
inconvenience.  *See Koh*, 250 F. Supp. 2d at 636-37 ("[I]t is
permissible to infer, absent any contrary evidence from the non-
movant, that witnesses are located at or near the center of the
alleged[ events] and that witnesses . . . are material.").  While
Defendant does not offer evidence to suggest that these party
witnesses would be unable to travel to Virginia, it is
nevertheless clearly the case that the Eastern District of

Virginia is more inconvenient for these witnesses than the
Central District of California.

Both Defendants and Plaintiffs are unable to identify
any witnesses, either party or non-party, who reside in Virginia.
The absence of any witnesses in the chosen forum weighs in favor
of transfer to a more convenient forum. *See GTE Wireless*, 71 F.
Supp. 2d at 519-20 (transferring case where, *inter alia*, the
plaintiff failed to identify a single witness in the Eastern
District of Virginia who had testimony relevant or unique enough
to warrant venue). Instead, Plaintiffs base their argument for
witness convenience in the chosen forum on the fact that, for
Plaintiffs' party and non-party witnesses alike, this District is
less inconvenient than the Central District of California. *See*
Pls.' Mem. in Opp'n at 12. Plaintiffs first point to the
Professors and Lucchi, all non-party witness who reside in Italy,
and argue that it will be a greater inconvenience for them to fly
across the United States than to Virginia. *Id.* (citing Mazzieri
Decl. at ¶¶ 3-4). These witnesses, however, have already
demonstrated by their prior actions their willingness to travel
to California in matters relating to the substance of this case.
J. Nagashima Aff. at ¶ 4. Given this behavior, Plaintiffs'
contention as to the relative convenience of Virginia for these
non-party witnesses holds less weight.

Plaintiffs make the same argument regarding their
employee witnesses, all of whom also reside in Italy. *See* Pls.'

14

Mem. in Opp'n at 12 (citing Mazzieri Decl. at ¶ 6).  In support
of this argument, Plaintiffs provide evidence that a flight from
Rome to Los Angeles is roughly six hours longer than a flight
from Rome to Dulles International Airport, and contrast these
lengthy flights with the five to six hour flights from Los
Angeles to Dulles that Defendants' witnesses face.  *See* Pls.'
Mem. in Opp'n at 12 (citing Dubin Decl. at ¶¶ 19-22).
Plaintiffs' research also indicates that there are direct flights
from Rome to Dulles but no direct flights from Rome to Los
Angeles.  *Id.*  However, Plaintiffs' analysis is flawed by the
fact that all of the employee witnesses identified in paragraph
six of the Mazzieri Declaration reside in Genoa, not Rome.
Mazzieri Decl. at ¶ 6.  According to Defendants' calculations,
flights from Genoa to Dulles are in some instances less than
three hours shorter than flights from Genoa to Los Angeles, and
none are non-stop.  Def.'s Reply at 10 (citing Exs. E and F to
Second Decl. of Lee Ann Stevenson).

       In situations where the original forum is convenient
for the plaintiff's witnesses, but inconvenient for the
defendant's witnesses, and where the reverse is true for the
transferee forum, "transfer is inappropriate as it would 'shift
the balance of inconvenience'" to the other party.  *JTH Tax,
Inc.*, 482 F. Supp. 2d at 737 (quoting *Bd. of Trustees, Sheet
Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning,
Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988)).  This case,

however, does not involve a situation where the transferee forum is inconvenient to Plaintiffs' witnesses or where transfer would mean shifting the "balance of inconvenience."  While transferring this case to the Central District of California would be more convenient for Defendants' party witnesses, who would then not have to fly cross-country, transfer has a minimal impact on Plaintiffs' party witnesses: it simply requires that they spend a few more hours on a plane than they would have to if the case remained in the Eastern District of Virginia.  Because transfer is only marginally less convenient for Plaintiffs' witnesses, it does not constitute a prohibited shifting of the "balance of inconvenience."  Thus, on balance, the Court finds that witness convenience weighs in favor of transfer.

### 3) Convenience of the parties

The convenience of the parties factor includes an assessment of "the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process."  *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.3 (E.D. Va. 2005).  This factor is chiefly operative in cases where the plaintiff chooses a forum away from home.  *Bd. of Trs.*, 702 F. Supp. at 1258.  Where, as here, plaintiff chooses a forum that is not their home, "plaintiff's venue choice is given less weight and if the venue substantially inconveniences defendants, transfer may be ordered."  *Id.*

16

In arguing for the inconvenience of the Eastern
District of Virginia, Defendant largely rehashes its arguments
regarding witness convenience.  Defendant expands upon those
arguments, however, by noting that with the current forum
Defendant's party witnesses – all highly skilled and difficult to
replace employees – would be away from work for extended periods
of time to the detriment of Defendant.  Def.'s Mot. to Transfer
at 12.  Defendant also asserts that virtually all of their
discoverable documents "that may be relevant and necessary to
this case" are maintained in California, including documents
showing the development history of Defendant's wheel motor
technology, the design specifications and test reports for that
technology, and correspondence by and between Defendant employees
and the Professors and Lucchi.  *Id.* at 12-13 (citing J. Nagashima
Aff. at ¶ 8).

Plaintiffs, in addition to rearguing their point
regarding the additional time and distance required to fly from
Italy to Los Angeles as compared to Dulles, note that in this
District they would have access to Finmeccanica facilities like
Selex Sensors and August Wetland, and would be subject to a less
significant time difference from Italy.  Pls.' Mem. in Opp'n at
13.  Plaintiffs also challenge Defendants' claim regarding their
documents, contending that "in the age of electronic discovery
the physical location of documents is simply not an important

17

consideration." *Id.* (citing 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Juris. 3d* § 3853 (2007)).

The Court finds that Defendant has not offered much in the way of specific evidence as to how the absence of its employee witnesses due to their involvement in this case would be significantly more disruptive if the case remains in this District than if it were transferred.  The Court is also skeptical that, in the age of electronic discovery, the location of potentially relevant documents has much impact on the convenience to either party.  Nevertheless, as the Court found in Part III.A.1 of this Opinion, Plaintiffs did not file in their home forum, and thus their chosen venue receives less weight. Moreover, Defendant's arguments about party witness convenience, which weighed strongly in its argument for witness convenience, weigh strongly here as well.  Consequently, the Court finds that this factor tips slightly, but not substantially, in favor of Defendant.

### 4) The interests of justice

The interests of justice factor encompasses "those factors unrelated to witness and party convenience," *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939-40 (E.D. Va. 2001), and includes such considerations as "a court's familiarity with the applicable law, where the claim arose, and the relative congestion of the courts' dockets." *Original Creatine Patent Co.*, 387 F. Supp. 2d at 571-72.  As the Court discussed in Part

18

III.A.1 of this Opinion, a substantial portion of the events
giving rise to Plaintiffs' claims occurred at Defendant's
California facility in the Central District of California.
Furthermore, there are no witnesses who reside in Virginia, and
at least six potential witnesses who reside in the Central
District of California.  The interests of justice calculation
includes the interest of having local controversies decided at
home, *see Intranexus, Inc. v. Siemens Medical Solutions Health
Services Corp.*, 227 F. Supp. 2d 581, 585 (E.D. Va. 2002), and in
this case the controversy is located squarely in California.

As to the Court's familiarity with applicable law,
according to Plaintiffs' Complaint two claims arise under
California statutory law and one claim arises under Virginia
statutory law.  Compl. at ¶¶ 35-38, 72-84.  The remaining claims
are state common law tort claims.  However, because the events
giving rise to these claims largely occurred in California, it is
most likely that California substantive law will apply.  *See
Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va.
1993)(holding that in tort causes of action Virginia applies the
law of the state where the "place of the wrong" occurred).
Naturally, federal courts in California will be more familiar
with California state law than federal courts in Virginia.

Plaintiffs base their interests of justice argument
primarily on docket considerations, contending that a speedy
resolution of this case is essential to their interests, and that

19

the Eastern District of Virginia will facilitate that speedy
resolution.  *See* Pls.' Mem. in Opp'n at 16.  While docket
considerations are a relevant factor in the interests of justice
analysis, they "cannot be the primary reason for retaining a case
in this district. . . . The 'rocket docket' certainly attracts
plaintiffs, but the Court must ensure that this attraction does
not dull the ability of the Court to continue to act in an
expeditious manner."  *Cognitronics Imaging Systems, Inc. v.
Recognition*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000).  When
docket considerations are the primary reason a plaintiff has
chosen the Eastern District of Virginia, "the interest of justice
is not served."  *Original Creatine Patent Co.*, 387 F. Supp. 2d at
572.

          To the extent docket considerations are relevant,
Plaintiffs' own statistics show that there is only a 1.3 month
difference in the median time from filing a civil case to
disposition of that case between the two Districts.  *See* Exs. M
and N to Dubin Decl.  Moreover, the Central District of
California is the tenth most efficient District from filing to
disposition in civil cases.  *Id.*  Perhaps the only significant
difference between the two Districts that weighs in favor of
Plaintiffs is the median time from filing to trial in civil
cases: 21.3 months in the Central District of California versus
9.3 months in the Eastern District of Virginia.  *Id.*  Taking all
of these things into consideration, however, the Court finds that

the interests of justice weigh in favor of transferring this case to the Central District of California.

After weighing all of the factors pertaining to a transfer of venue under 28 U.S.C. § 1404(a), the Court finds that these factors weigh in favor of transferring this case from the Eastern District of Virginia to the Central District of California.  Thus, the Court will grant Defendant's Motion to Transfer.

### B. Defendant's Motion to Dismiss

In addition to its Motion to Transfer, Defendant moves in the Alternative to Dismiss for Lack of Subject Matter Jurisdiction and Failure to Name Essential Parties.  Because the Court will grant Defendant's Motion to Transfer, it need not consider Defendant's Motion to Dismiss in the Alternative.

### IV.   Conclusion

For these reasons, the Court will grant Defendant's Motion to Transfer and, as a result, will not reach Defendant's Motion to Dismiss in the Alternative.

An appropriate Order will issue.


November 19, 2007              _____/s/_____
Alexandria, Virginia                  James C. Cacheris
                            UNITED STATES DISTRICT COURT JUDGE

21